UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AMANDA GORMAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:16-cv-02502-SEB-DLP |
| ANDY MOHR AVON NISSAN INC., | ) ) ) |
| Defendant. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on Defendant's Motion for Summary Judgment [Docket No. 26], filed on September 20, 2017. Plaintiff Amanda Gorman brought this lawsuit against her former employer, Defendant Andy Mohr Avon Nissan Inc. ("Andy Mohr"), alleging violations of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978, based on sex and pregnancy discrimination, as well as Title VII retaliation and Equal Pay Act claims. For the reasons detailed below, we GRANT IN PART and DENY IN PART Defendant's Motion for Summary Judgment.[1]

**Factual Background**

Andy Mohr is an Indiana corporation that operates automotive dealerships selling new and used vehicles in Indiana. On April 30, 2012, Andy Mohr hired Ms. Gorman to

---

[1] Ms. Gorman concedes that Defendant is entitled to summary judgment on her Title VII retaliation and Equal Pay Act claims. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's Title VII retaliation and Equal Pay Act claims is GRANTED.

1

serve as a Parts Counter Sales Representative for one of its dealerships. At the time she was hired, Ms. Gorman had no experience selling automotive parts. On February 11, 2013, approximately nine months after she was hired, Ms. Gorman was promoted to the newly-created position of Parts Manager. Ms. Gorman's promotion included a pay increase from $10.50 per hour to a salary of $600.00 paid biweekly, in addition to a commission and bonus. Her salary was subsequently increased on March 12, 2013 to $800.00 biweekly as well as a commission and bonus. In February 2015, Ms. Gorman received another pay increase to $1,000.00 paid bi-weekly, plus a bonus and commission of eight percent (8%) on her parts department sales and a two percent (2%) commission on service department sales. Throughout her tenure with Andy Mohr, Ms. Gorman was never formally disciplined and did not receive any negative performance reviews.

**Defendant's Employment Policies**

At the time she was hired, Ms. Gorman was given an employee handbook that set forth Andy Mohr's employment policies, including its "Equal Opportunity Policy" and "No Harassment Policy." According to these policies, any employee who believes he or she has been subjected to discrimination may report a complaint either to a supervisory or to another company official. The relevant portions of these policies provide as follows:

> **EQUAL OPPORTUNITY POLICY**
>
> It is the policy of this dealership to provide equal employment and advancement policies without regard to employee's race, color, sex, religion, national origin, age or disability as defined in the Americans with Disabilities Act (ADA). This policy will be carried out by the Company in a manner consistent with good business practices and procedures and, of course, in compliance with all applicable state and federal laws.

**EMPLOYMENT POLICIES AND EMPLOYEE RELATIONS PHILOSOPHY**

One of the primary considerations is the ability of a person to get along with their (sic) associates and their (sic) ability to project a good image to our customers. … Because questions can only be answered and complaints can only be solved when there is communication, the Company has established an open door policy with respect to the availability of supervisors and managers. This is extremely important in order for us to maintain good channels of communication between the Company and you.

**FAMILY MEDICAL LEAVE OF ABSENCE**

Our organization complies with the Family and Medical Leave Act (FMLA). Pursuant to FMLA, an employee is entitled to take up to twelve weeks during any twelve month period for: 1. The birth of a child. …

Exhs. B and C to Mendoza Decl.

**Plaintiff's Performance**

According to Defendant, some time after Ms. Gorman received her pay increase in February 2015, Andy Mohr's General Manager, Benjamin Mendoza, began to receive reports of issues arising between Ms. Gorman and other employees, including service department team members, technicians, service writers, and Service Department Director Matt Pope. Specifically, the complaints included that Ms. Gorman "gave special treatment to some employees and less than professional treatment to other employees." Mendoza Decl. ¶ 12. Mr. Mendoza discussed these issues with Mr. Pope and Director of Operations Eric Spursrud during late summer 2015, but authorized no disciplinary action at that time. Ms. Gorman denies that she had any issues with her co-workers or supervisors, noting that her record is clear which shows that she was never formally disciplined or written up for any such complaints.

**Defendant Considers Restructuring Parts Department**

Around that same time, in late August or early September 2015, Mr. Mendoza and Mr. Pope discussed making certain changes in the parts and service department by implementing a modified staffing arrangement to reflect their belief that the department perhaps could function without a manager. Although that change was discussed, no immediate action was taken to effectuate it.

**Plaintiff's Interaction with New Parts Department Employee**

On August 31, 2015, Ms. Gorman was involved in a motor vehicle accident while commuting to work. She reported the accident to Andy Mohr who notified its worker's compensation carrier. Ms. Gorman was absent from work for a few days as a result of the accident. While she was recovering from the accident, Andy Mohr hired Monty Havins as a Parts Counter Representative. Mr. Havins had prior parts department and management experience and was knowledgeable about the Nissan brand. Because Ms. Gorman at that point was still off work following her accident, she was not involved with the hiring of Mr. Havins. According to Defendant, upon her return to work, Ms. Gorman "did not want to work with [Mr. Havins] and appeared to be threatened or jealous of his experience." Def.'s Ans. to Interrog. No. 10.

At some point in late September 2015, Ms. Gorman was scheduled to cover certain parts department duties that had been assigned to Mr. Havins during her absence. However, Ms. Gorman left the dealership for a doctor's appointment only a few minutes after she had arrived that day, leaving Mr. Havins with the responsibility of covering all parts department duties while she was away from the dealership. Ms. Gorman returned

4

approximately two and a half hours later, but remained at work for only about ten minutes before leaving the dealership for another hour and a half, again leaving Mr. Havins to assume full responsibility for the parts department duties. According to Mr. Havins, because Ms. Gorman had been on vacation the Friday and Saturday preceding her doctor's appointment that Monday, he had been working alone, without managerial assistance, "for basically three days" and he "was fed up" and "done." Havins Dep. at 11. Upon Ms. Gorman's return to the dealership that afternoon, Mr. Havins walked off the job, intending to quit, without informing anyone that he was leaving.

**Plaintiff's Termination**

Not long after Mr. Havins left the dealership, he contacted Mr. Pope and laid out his complaints with Ms. Gorman. Mr. Pope attempted to convince Mr. Havins to return to the dealership to resolve the problems with Ms. Gorman. When Mr. Pope received Mr. Havins's call, he (Pope) was at a business lunch with Mr. Mendoza. Following Mr. Pope's conversation with Mr. Havins, Mr. Pope and Mr. Mendoza discussed, and ultimately decided, to eliminate the parts department manager position occupied by Ms. Gorman in order to have Mr. Pope assume the duties of managing both the parts and the service departments, and to retain Mr. Havins as a counter employee in the parts department.

On October 1, 2015, approximately three days after Mr. Havins walked off the job due to his frustrations with Ms. Gorman, Mr. Mendoza informed Ms. Gorman that her employment was being terminated as a result of the dealership's decision to restructure the parts department and eliminate her position. Ms. Gorman indicated to Mr. Mendoza

that she was pregnant and asked him whether that was the reason for her termination. Mr. Mendoza denied that her pregnancy had any relationship to the company's termination decision.

It is not clear from the record before us precisely when and how Mr. Mendoza first learned of Ms. Gorman's pregnancy. According to Ms. Gorman, she first learned she was pregnant on September 29, 2015, two days before she was terminated, and informed Mr. Mendoza of her pregnancy on that same day. Ms. Gorman also told at least two of her co-workers shortly before her termination that she was pregnant. Mr. Mendoza testified by deposition that he initially became aware of Ms. Gorman's pregnancy by "hear[ing] from other people. A lot of employees will talk …." Mendoza Dep. at 14. When asked in his deposition how long before Ms. Gorman's termination he was made aware of her pregnancy, he answered, "I don't know. I don't remember." *Id.* He does not deny having had knowledge of Ms. Gorman's pregnancy before making the termination decision, however.

**Defendant Reinstitutes Parts Department Manager Position**

For a few weeks after Ms. Gorman's termination, Mr. Pope performed the management duties for both the parts and the service departments as he and Mr. Mendoza had planned. Thereafter, Mr. Pope approached Mr. Mendoza to indicate that he no longer wanted to perform managerial duties for both departments and to suggest that the parts department managerial duties be given to Mr. Havins.

In November 2015, approximately one month after Mr. Mendoza had terminated Ms. Gorman's employment, he promoted Mr. Havins to the previously-eliminated

position of Parts Manager. According to Mr. Mendoza, this decision was made because the dealership's attempt to have Mr. Pope perform managerial duties for both the parts and the service departments was not working and because the company wanted to reward Mr. Havins for his performance and positive interaction with the service department. Mr. Havins's salary was set at $1,000 paid bi-weekly, plus a commission of five percent (5%) on parts department sales and one percent (1%) on service department sales.

According to Mr. Mendoza, the quality of Mr. Havins's performance exceeded Ms. Gorman's in the parts department, as reflected by an increase in revenues after Mr. Havins had become Parts Manager. Mr. Havins's performance subsequently plateaued, however, and, in July 2017, Andy Mohr hired another person with more skill and experience to manage the parts department; Mr. Havins was removed from the Parts Manager position.

**The Instant Litigation**

After filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and receiving her notice of right to sue from the EEOC, Ms. Gorman filed her complaint in this court on September 20, 2016, alleging, *inter alia*, that she was terminated because of her sex and pregnancy, in violation of Title VII. Defendant filed this motion for summary judgment on September 20, 2017. That motion is fully briefed and ripe for ruling.

## Legal Analysis

### I. Summary Judgment Standard

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). We neither weigh the evidence nor evaluate the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant. *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

### II. Discussion

Ms. Gorman alleges that Andy Mohr terminated her because of her sex and pregnancy, in violation of Title VII, as amended by the Pregnancy Discrimination Act. *See Young v. United Parcel Serv., Inc.*, 135 S.Ct. 1338, 1343 (2015) ("The Pregnancy Discrimination Act makes clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy."). An analysis of these claims invokes the Seventh Circuit's decision in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), which states that regardless of whether the court uses the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) or some other framework to evaluate a plaintiff's employment discrimination and retaliation claims, "the ultimate legal question 'is simply whether the evidence would permit a reasonable factfinder to

8

conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 547 (7th Cir. 2017) (quoting *Ortiz*, 834 F.3d at 765). Under this "simplified" approach, the "[e]vidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Ortiz*, 834 F.3d at 765.

Here, upon careful review of the record, we find that Ms. Gorman has adduced sufficient circumstantial evidence, when viewed as a whole, to create a triable issue as to whether her termination of employment was motivated by discriminatory intent by Defendant. The Seventh Circuit has recognized three types of circumstantial evidence on which a plaintiff may rely "to provide a basis for drawing an inference of intentional discrimination." *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). Each type of evidence may be "sufficient by itself (depending of course on its strength in relation to whatever other evidence is in the case) to support a judgment for the plaintiff; or they can be used together." *Id.* Ms. Gorman relies on two of the three forms of evidence here, to wit, "suspicious timing" and "evidence that [she] was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and [her] employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination." *Id.*

First, Ms. Gorman has presented evidence of the very close temporal proximity between Mr. Mendoza learning of her pregnancy and her termination. *See Milligan-Grimstad v. Stanley*, 877 F.3d 705, 711 (7th Cir. 2017) ("In some circumstances,

9

suspicious timing may reveal discriminatory intent.") (citation omitted). Although there is some dispute regarding the manner in which Mr. Mendoza became aware of Ms. Gorman's pregnancy, it is undisputed that he knew she was pregnant at the time of her termination and that he acquired that knowledge no more than three days before he made the decision to terminate her. While by no means ultimately determinative, the timing of Ms. Gorman's discharge, coming as it did on the heels of her pregnancy news, is at least probative of the ultimate question of whether her termination was the result of discrimination. As the Seventh Circuit has recognized, "even if suspicious timing *alone* is not enough to create a triable issue in a particular case, suspicious timing remains 'an important evidentiary ally of the plaintiff.'" *See Peele v. Burch*, 722 F.3d 956, 960 (7th Cir. 2013) (quoting *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 675 (7th Cir. 2011)) (emphasis in original). This is particularly true where, as here, the time period between events is no more than a few days, given that "[t]he closer two events are, the more likely that the first caused the second." *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011).

In addition, Ms. Gorman has adduced evidence of pretext. The shifting reasons given by Andy Mohr for Ms. Gorman's termination raises suspicion of discrimination. Defendant never told Ms. Gorman that she was being terminated because she was unqualified for the position or because of performance deficiencies. Rather, she was told only that she was being discharged because the company had decided to restructure the parts department and eliminate her position, to wit, the position of Parts Manager. However, only a few weeks following her termination, Defendant reinstated the Parts

10

Manager position[2] and replaced Ms. Gorman with Mr. Havins, who, as a man, is obviously incapable of becoming pregnant. Although Defendant maintains that it gave Mr. Havins the position because he was better qualified than Ms. Gorman and also interacted with the service department more professionally than she, there is evidence in the record before us on which a reasonable jury could rely that cuts against this characterization of Mr. Havins's qualifications and professionalism—namely, the fact that, shortly before he was promoted, he walked off the job in the middle of his shift without explanation and later had to be convinced by Mr. Pope to return to work.

Additionally, despite the fact that Ms. Gorman never received any formal discipline throughout her tenure with Andy Mohr, Defendant now contends that she was also fired because she was "reluctant" to work the hours required of the Parts Manager and "created a hostile work environment for Mr. Havins," (Def.'s Ans. to Interrog. No. 10(d)). The only evidence of the latter, beyond Defendant's vague speculation that Ms. Gorman was jealous of or threatened by Mr. Havins's experience, is that on one occasion she took longer than expected at a doctor's appointment thereby leaving Mr. Havins to work alone in managing the department for a few hours, following his having done so during the prior two workdays when she was on vacation. Defendant's characterization of this relatively minor incident as a hostile working environment could be viewed by a

---

[2] There is no evidence that the restructured department was unsuccessful—in fact, Mr. Havins testified that the parts department was running "flawlessly" with Mr. Pope managing both the parts and services departments. Havins Dep. at 9. The only reason given by Defendant for reverting to the dual management structure after such a short time was that Mr. Pope decided he no longer wanted to manage both departments.

11

reasonable jury as at best disingenuous, particularly given that there is no indication that anyone in management ever discussed with Ms. Gorman the frustrations raised by Mr. Havins or otherwise conducted any investigation into the situation before terminating her.

In sum, these facts, viewed as a whole and in the light most favorable to Ms. Gorman, as we are required to do at the summary judgment stage, could support a reasonable jury's finding that Andy Mohr terminated Ms. Gorman because of her sex or pregnancy in violation of Title VII. On the facts before us, determining whether such an inference of discrimination is appropriate "cannot be resolved by a legal rule; the answer depends on context, just as an evaluation of context is essential to determine whether an employer's explanation is fishy enough to support an inference that the real reason must be discriminatory." *Loudermilk*, 636 F.3d at 315. Defendant will obviously be free to present any nondiscriminatory explanations it may have to the jury at trial, but evaluating those reasons will require credibility determinations that cannot be resolved solely based on the parties' written submissions. Accordingly, Ms. Gorman's Title VII claims based on sex and pregnancy discrimination survive summary judgment.

## III. Conclusion

For the reasons detailed above, we <u>GRANT IN PART</u> and <u>DENY IN PART</u> Defendant's Motion for Summary Judgment. Summary judgment is <u>GRANTED</u> as to Plaintiff's Title VII retaliation and Equal Pay Act claims and <u>DENIED</u> as to Plaintiff's

Title VII claims based on sex and pregnancy discrimination. The case shall proceed accordingly.

IT IS SO ORDERED.

Date: 6/7/2018

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution to counsel of record via CM/ECF